**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

MOHAMMED MAHMOD ALI AL-SAEDI,

*Plaintiff*,

v.

ROHIT NEPAL, Chargé d'Affaires, a.i., U.S.
Embassy in Jordan, *et al.*,

*Defendants.*

Civil Action No. 25-cv-1113 (RDM)

## <u>MEMORANDUM OPINION</u>

Mohammed Mahmod Ali Al-Saedi, a citizen of the United Kingdom, brings this action

under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1), and the Mandamus Act, 28

U.S.C. § 1361, against Defendants Rohit Nepal, Chargé d'Affaires at the U.S. Embassy in

Jordan, and Marco Rubio, the Secretary of the U.S. Department of State.  Dkt. 1 at 7 (Compl.

¶¶ 17–18).  Now before the Court is Defendants' motion to dismiss Plaintiff's complaint

pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Dkt. 6.  For the reasons that

follow, the Court will **GRANT** Defendants' motion and will dismiss the complaint.

## I. BACKGROUND

Plaintiff Mohammed Mahmod Ali Al-Saedi is a citizen of the United Kingdom.  Dkt. 1 at

7 (Compl. ¶ 16).  On January 17, 2024, Plaintiff submitted a Form DS-160 to apply for a

nonimmigrant visa to enter the United States.  *Id.* at 7 (Compl. ¶ 19).  On January 21, 2024,

Plaintiff completed a visa interview with a consular officer at the U.S. Embassy in Jordan.  *Id.* at

8 (Compl. ¶ 21).  Following the interview, Plaintiff was informed that his application was being

placed in administrative processing pursuant to Section 221(g) of the Immigration and

Nationality Act ("INA"). *Id.* at 8 (Compl. ¶ 22); Dkt. 1-3. The U.S. Embassy in Jordan asked Plaintiff to send additional information to facilitate the processing of his visa application. Dkt. 1 at 8 (Compl. ¶ 22); Dkt. 1-3. After Plaintiff submitted the requested information, the Embassy scheduled Plaintiff for a second interview, but Plaintiff requested that the interview be rescheduled to accommodate his travel plans. Dkt. 1 at 8 (Compl. ¶ 23); Dkt. 1-4 at 2–3.

Since January 21, 2024, the Consular Electronic Application Center's website has reported the status of Plaintiff's visa application as "Refused." Dkt. 1 at 8 (Compl. ¶ 25); Dkt. 1-5 at 2; *see also* Dkt. 13 at 1. An explanatory blurb notes that "[a] U.S. consular officer has adjudicated and refused your visa application." Dkt. 1-5 at 2. It further explains: "If you were informed by the consular officer that your case was refused for administrative processing, your case will remain refused while undergoing such processing. You will receive another adjudication once such processing is complete." *Id.*

After submitting inquiries regarding the status of his visa application to a U.S. Senator and to the U.S. Embassy in Jordan, Dkt. 1 at 9 (Compl. ¶¶ 27–28); Dkt. 1-6; Dkt. 1-7, Plaintiff brought this action against Chargé d'Affaires Rohit Nepal and Secretary of State Marco Rubio, *see* Dkt. 1 at 7 (Compl. ¶¶ 17–18). Plaintiff alleges that Defendants' delay in processing his visa application has prevented him from spending time with his family and pursuing "professional opportunities that require his physical presence." *Id.* at 2–6 (Compl. ¶¶ 5–8). Plaintiff seeks relief under the APA, 5 U.S.C. § 706(1), and the Mandamus Act, 28 U.S.C. § 1361. *Id.* at 10–14 (Compl. ¶¶ 32–61). He requests a court order compelling Defendants to complete the adjudication of his nonimmigrant visa application "within fifteen (15) calendar days" of any such order "or as soon as reasonably possible." *Id.* at 15 (Compl. ¶ 63).

Pending before the Court is Defendants' motion to dismiss Plaintiff's complaint for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim pursuant to Rule 12(b)(6).[1]  Dkt. 6.  The motion is fully briefed and ripe for consideration.  *See* Dkt. 6; Dkt. 7; Dkt. 9; Dkt. 10; Dkt. 11; Dkt. 12.

## II.  LEGAL STANDARD

A motion to dismiss under Rule 12(b)(1) challenges the Court's jurisdiction to hear the plaintiff's claim and may take one of two forms.  First, a Rule 12(b)(1) motion "may raise a 'facial' challenge to the Court's jurisdiction."  *Hale v. United States*, No. 13-1390, 2015 WL 7760161, at *3 (D.D.C. Dec. 2, 2015).  A facial challenge asks whether the complaint alleges facts sufficient to establish the court's jurisdiction.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *see also Owner-Operator Indep. Drivers Ass'n v. U.S. Dep't of Transp.*, 879 F.3d 339, 346–47 (D.C. Cir. 2018).  In this posture, the Court must accept the factual allegations of the complaint as true and construe them in the light most favorable to the non-moving party.  *Erby v. United States*, 424 F. Supp. 2d 180, 182 (D.D.C. 2006) (collecting cases).

"Alternatively, a Rule 12(b)(1) motion may pose a 'factual' challenge to the Court's jurisdiction."  *Hale*, 2015 WL 7760161, at *3.  When a motion to dismiss is framed in this manner, "the [C]ourt may not deny the motion . . . merely by assuming the truth of the facts

---

[1] Defendants argue that Local Civil Rule 7(n)'s requirement that the agency file a certified list of the contents of the administrative record with the filing of a dispositive motion does not apply because Plaintiff challenges agency inaction, not final agency action.  Dkt. 6 at 27 n.2.  This Court has previously rejected Defendants' argument that Local Civil Rule 7(n) does not apply to undue-delay claims.  *See Janay v. Blinken*, 743 F. Supp. 3d 96, 104–05 (D.D.C. 2024).  Nonetheless, because the Court "concludes that the administrative record is unnecessary to decide the threshold legal questions presented by the pending motion to dismiss," it will waive compliance with Local Civil Rule 7(n).  *Id.* at 105.

alleged by the plaintiff and disputed by the defendant" but "must go beyond the pleadings and resolve any disputed issues of fact the resolution of which is necessary to a ruling upon the motion to dismiss." *Phoenix Consulting, Inc. v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000). "The [C]ourt has considerable latitude in devising the procedures it will follow to ferret out the facts pertinent to jurisdiction," so long as it "afford[s] the nonmoving party an ample opportunity to secure and present evidence relevant to the existence of jurisdiction." *Prakash v. Am. Univ.*, 727 F.2d 1174, 1179–80 (D.C. Cir. 1984) (internal quotation marks and citations omitted).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), in contrast, "tests the legal sufficiency of a complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002); *see* Fed. R. Civ. P. 12(b)(6). In evaluating such a motion, the Court "must first 'tak[e] note of the elements a plaintiff must plead to state [the] claim' to relief, and then determine whether the plaintiff has pleaded those elements with adequate factual support to 'state a claim to relief that is plausible on its face.'" *Blue v. District of Columbia*, 811 F.3d 14, 20 (D.C. Cir. 2015) (alterations in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675, 678 (2009)). The complaint need not include "detailed factual allegations," and a plaintiff may survive a Rule 12(b)(6) motion even if "recovery is very remote and unlikely," so long as the facts alleged in the complaint are "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007) (internal quotation marks and citation omitted). The Court may consider only "the facts contained within the four corners of the complaint," *Nat'l Postal Pro. Nurses v. U.S. Postal Serv.*, 461 F. Supp. 2d 24, 28 (D.D.C. 2006), along with "any documents attached to or incorporated into the complaint, matters of which the court may take

4

judicial notice, and matters of public record," *United States ex rel. Head v. Kane Co.*, 798 F.

Supp. 2d 186, 193 (D.D.C. 2011).

### III. ANALYSIS

At the conclusion of Plaintiff's visa interview, the consular officer refused his visa

application pursuant to INA § 221(g), Dkt. 1 at 8 (Compl. ¶ 22); Dkt. 1-3, which provides that

"[n]o visa or other documentation shall be issued to an alien if . . . it appears to the consular

officer . . . that such alien is ineligible to receive a visa," 8 U.S.C. § 1201(g).  A refusal pursuant

to INA § 221(g) is based on a consular officer's determination that the applicant has failed to

carry his burden of establishing that he is eligible for a visa.  When an application is

insufficiently supported, however, "a consular officer may determine that additional

information . . . may help establish an applicant's eligibility for a visa."  U.S. Department of

State, *Administrative Processing Information*, https://travel.state.gov/content/travel/en/us-

visas/visa-information-resources/administrative-processing-information.html

(https://perma.cc/G6GV-A2TN).  If so, the consular officer may place a refused application in

administrative processing, which enables the officer to "re-open and re-adjudicate the applicant's

case" upon the receipt of new information showing that the applicant has become eligible for a

visa.  *Karimova v. Abate*, No. 23-5178, 2024 WL 3517852, at *2 (D.C. Cir. July 24, 2024).

That is what happened here.  The consular officer placed Plaintiff's application into

administrative processing, where it has remained for about two years.  Plaintiff now seeks relief

for Defendants' alleged "failure to adjudicate [his] visa application," Dkt. 1 at 9 (Compl. ¶ 30);

that is, he seeks the completion of administrative processing and a final determination.  He

brings claims under the Mandamus Act and the APA, both of which authorize federal courts to

compel an agency to act when the agency has violated "a clear duty to act."  *In re Core*

5

*Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) (internal quotation marks and citation omitted).  Defendants urge the Court to dismiss Plaintiff's claims for three reasons.  First, they argue that Plaintiff's claims fail because they do not identify a discrete agency action that a consular officer was required, but failed, to take.  Dkt. 6 at 11–15.  Second, they argue that Plaintiff's claims are barred by the consular nonreviewability doctrine.  *Id.* at 15–18.  Finally, they argue that Plaintiff has failed to state a plausible claim that the adjudication of his visa application has been unreasonably delayed.  *Id.* at 18–27.  Because the consular nonreviewability doctrine is not a jurisdictional defense, *Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1028–29 (D.C. Cir. 2021), the Court will begin with Defendants' first argument.

Defendants seek dismissal of Plaintiff's claims on the ground that Plaintiff "cannot identify a clear, non-discretionary duty requiring a consular officer to take any action on the Visa Application now that it has been refused under INA Section 221(g), 8 U.S.C. § 1201(g)."  Dkt. 6 at 11.  That argument implicates Plaintiff's claims under both the Mandamus Act and the APA.  Where a visa applicant seeks to compel a decision on his application, "'the standards for obtaining relief' under the Mandamus Act and the APA are 'essentially the same.'"  *Al-Gharawy v. U.S. Dep't of Homeland Sec.*, 617 F. Supp. 3d 1, 17 (D.D.C. 2022) (quoting *Vietnam Veterans of Am. v. Shinseki*, 599 F.3d 654, 659 n.6 (D.C. Cir. 2010)).

The Mandamus Act provides that district courts "shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  28 U.S.C. § 1361.  "To show entitlement to mandamus, [a plaintiff] must demonstrate (1) a clear and indisputable right to relief, (2) that the government agency or official is violating a clear duty to act, and (3) that no adequate alternative remedy exists."  *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir.

2016).  Mandamus relief is therefore appropriate only where a defendant owes the plaintiff "a clear nondiscretionary duty."  *Pittston Coal Grp. v. Sebben*, 488 U.S. 105, 121 (1988) (quoting *Heckler v. Ringer,* 466 U.S. 602, 616 (1984)).  The APA, in turn, authorizes federal courts to "compel agency action unlawfully withheld or unreasonably delayed."  5 U.S.C. § 706(1).  But the Supreme Court has clarified that "the only agency action that can be compelled under the APA is action legally *required*."  *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 63 (2004) (emphasis in original).  Like a claim for mandamus relief, then, "a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take.*"  *Id.* at 64 (emphasis in original).  One difference between a Mandamus Act claim and an APA claim is that a plaintiff's failure to identify a clear nondiscretionary duty poses a jurisdictional hurdle for mandamus relief, *see Lovitky v. Trump*, 949 F.3d 753, 759 (D.C. Cir. 2020), but goes to the merits of an APA claim, *see L'Association des Americains Accidentels v. United States Dep't of State*, 633 F. Supp. 3d 74, 80 (D.D.C. 2022).

Here, Plaintiff relies on 8 U.S.C. § 555(b) and 8 U.S.C. § 1202(d) to establish that Defendants have a mandatory duty to take his visa application out of administrative processing and to either issue him a visa or refuse his application again.  *See* Dkt. 7 at 16.  Defendants, in turn, contend that neither of these statutory or regulatory provisions require them to re-adjudicate Plaintiff's already-refused application.  They principally rely on the D.C. Circuit's recent unpublished decision in *Karimova*, which affirmed a district court's dismissal of a claim materially identical to the one before the Court.

As in this case, the *Karimova* plaintiff's visa application had been refused by a consular officer pursuant to INA § 221(g) and placed in administrative processing.  2024 WL 3517852, at *1–2.  The plaintiff sought a court order compelling the consular officer to "re-adjudicate her

7

already-refused application and, this time, to do it without subsequently retaining the application." *Id.* at *3. To show that the consular officer had a duty to re-adjudicate her visa application, the plaintiff relied exclusively on 5 U.S.C. § 555(b), a provision of the APA providing that "each agency shall proceed to conclude a matter presented to it [w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time." *Id.* (alterations in original, internal quotation marks and citation omitted). The court rejected the plaintiff's argument, reasoning that § 555(b) "simply expresses 'a congressional view that agencies should act within reasonable time frames,'" *id.* (quoting *Telecomms. Rsch. & Action Ctr. v. FCC*, 750 F.2d 70, 77 (D.C. Cir. 1984) ("*TRAC*")), while "leav[ing] officials ample room for judgment based on the circumstances," *id.* It further explained that the "generality and indistinctness" of § 555(b) posed "particularly acute problems" for the plaintiff given "our starting point . . . that consular officers have broad discretion when adjudicating visa applications" and the "background principle of judicial abstinence" from reviewing consular decisions. *Id.* at *4, 6.

Karimova is an unpublished opinion, and decisions of this Court have disagreed about its precedential force. *Compare Ibrahim v. Spera*, No. 23-3563, 2024 WL 4103702, at *3 (D.D.C. Sept. 6, 2024) (treating *Karimova* as precedential), *with Hajizadeh v. Blinken*, No. 23-1766, 2024 WL 3638336, at *3 n.3 (D.D.C. Aug. 2, 2024) (declining to treat *Karimova* as precedential); *see also Seifan v. Sweeney*, No. 25-261, 2025 WL 2171093, at *3 (D.D.C. July 31, 2025) (collecting district court cases splitting on the precedential effect of unpublished circuit decisions). But even if *Karimova* is non-precedential, the Court finds its essential reasoning persuasive and concludes that § 555(b) does not impose a clear legal duty on consular officers to re-adjudicate a visa application that has been refused and placed in administrative processing.

8

The Court is also unpersuaded that 8 U.S.C. § 1202(d) imposes a non-discretionary duty on consular officers to complete administrative processing within a specific period of time. Section 1202(d) addresses the documentary evidence required to obtain a visa. After instructing aliens applying for a nonimmigrant visa to furnish "a certified copy of such documents pertaining to him as may be by regulations required," its final sentence provides that "[a]ll immigrant visa applications shall be reviewed and adjudicated by a consular officer." 8 U.S.C. § 1202(d). Competing decisions from this Court have debated whether this language merely addresses "*who* reviews visa applications rather than whether all such applications must be reviewed," *Zarei v. Blinken*, No. 21-2102, 2021 WL 9146060, at *1 (D.D.C. Sept. 30, 2021) (emphasis in original) (addressing the materially identical language in 8 U.S.C. § 1202(b)), or whether it requires the consular officer to render a decision—"up or down"—at some point, *see Al-Gharawy*, 617 F. Supp. at 12–13 (listing § 1202(b), along with other rules, to distinguish *procedural* from *substantive* review of consular inaction under the doctrine of consular nonreviewability). But nothing in the language of § 1202(d), or in any of these decisions, recognizes a "clear and indisputable" duty to act within a defined timeframe—and certainly not a "clear and indisputable" duty to act within the approximately two years that have now passed since Plaintiff's first interview. That is particularly the case here, moreover, where the consular officer sought additional information, *see* Dkt. 1 at 8 (Compl. ¶¶ 22–23), to assist in any further "administrative processing."

The "generality" of 8 U.S.C. § 1202(d) makes it an especially poor candidate for the source of a mandatory duty in this context. As the D.C. Circuit stressed in *Karimova*, claims challenging the visa adjudication process are "not standard administrative fare." 2024 WL 3517852, at *5. They arise "within a field that is 'vitally and intricately interwoven with

9

contemporaneous policies in regard to the conduct of foreign relations [and] the war power.'" *Id.* (alterations in original) (quoting *Harisiades v. Shaughnessy*, 342 U.S. 580, 588–89 (1952)). For that reason, the "admission and exclusion of foreign nationals" is "largely immune from judicial control." *Trump v. Hawaii*, 585 U.S. 667, 702 (2018) (internal quotation marks and citation omitted). In this context, the Court cannot find "a crystal-clear legal duty," *In re Ctr. for Biological Diversity*, 53 F.4th 665, 670 (D.C. Cir. 2022) (internal quotation marks and citation omitted), or a "legally required" duty to act on a particular timeframe, *Montanans for Multiple Use v. Barbouletos*, 568 F.3d 225, 227 (D.C. Cir. 2009), where a consular officer has reviewed an application, has determined that it is incomplete, and has requested additional information.

Because the absence of any clear, non-discretionary duty to re-adjudicate Plaintiff's visa application is dispositive of both his Mandamus Act and APA claims, it need not consider the applicability of the consular nonreviewability doctrine or whether Plaintiff can establish undue delay based on the *TRAC* factors.[2] The Court will, accordingly, grant Defendants' motion to dismiss.

---

[2] The Court has previously explained that "the consular nonreviewability doctrine does not bar review of undue-delay claims related to visas mired in administrative processing." *Janay*, 743 F. Supp. 3d at 110 (quoting *Khan v. Blome*, No. 22-2422, 2022 WL 17262219, at *2 (D.D.C. Nov. 29, 2022)); *see also Al-Gharawy*, 617 F. Supp. 3d at 11–17. The analysis set forth above has no bearing on that conclusion. Deciding whether consular officers have unfettered discretion over the process for reviewing visa applications requires a fundamentally different analysis than determining whether consular officers have a "crystal-clear legal duty," *In re Ctr. for Biological Diversity*, 53 F.4th at 670, to perform the action at issue here. And contrary to Defendants' suggestion, Dkt. 6 at 17–18, *Karimova* did not conclusively resolve the applicability of the consular nonreviewability doctrine to undue-delay claims. *Karimova* explicitly reserved the question whether the doctrine of consular nonreviewability "applie[d] in [that] case." 2024 WL 3517852, at *6.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss, Dkt. 6, is hereby **GRANTED**, and the Court will **DISMISS** Plaintiff's Mandamus Act claim for lack of subject-matter jurisdiction under Rule 12(b)(1) and his APA claim for failure to state a claim under Rule 12(b)(6).

A separate order shall issue.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  March 18, 2026